CASES IN THE SUPREME COURT

Addison,
January,
1831.

ELIAS HALL vs. ALMIRA HALL.

. In ejectment, where the defendant's title is derived from the plaintiff by levy of execution upon the lands in question, he cannot object to the plaintiff's introducing a deed of the same to substantiate his title from a third person, executed to him while defendant is in possession, on the ground that such possession is adverse, even should the levy prove void. Such deed being in confirmation of defendant's title, innures to his benefit.

When an officer extends an execution upon real estate, he must make out and subscribe his return within the life of the same ; otherwise no title passes to the creditor—the whole proceeding being void.

This was an action of ejectment for a tenement in Middlebury, tried in the County Court.—Plea, *General Issue.*

In support of his title, the plaintiff gave in evidence a deed of the premises in question, from Jacob Bartholomew, dated September 11, 1809, which was admitted.

For the purpose of showing the title out of the plaintiff, the defendant then offered in evidence a deed of the premises from the plaintiff to Horatio Seymour, dated the 26th of August, 1816, which was admitted.

The plaintiff then offered in evidence a deed from the said Horatio Seymour to himself of the premises, dated the      day of          1827. To the admission of this evidence, the defendant objected on the ground that the said deed was void—the defendant at the date thereof being in possession of the premises, claiming the same adversely to the said Horatio Seymour ; and offered evidence proving her possession of the premises at the date of said deed.

The plaintiff then offered in evidence an execution in the defendant's favor, against the plaintiff, dated the 4th day of March, 1823, returnable in sixty days from date, and the levy thereof upon the premises in question, dated the 5th day of May, 1823, together with evidence tending to prove that the defendant's possession was under the said levy, and that, therefore, said possession was not such as would render void the said conveyance from the said Horatio to the plaintiff.

To the admission of the said levy, and evidence of possession under it, the defendant objected. The Court overruled the objection, and admitted the evidence.

The defendant then offered in evidence, in support of her title to the premises, the record of a judgement, and

levy of an execution in her favor against the plaintiff, upon the premises in question—said execution dated the 4th day of March, 1823, and returnable in 60 days from date, on which, the officer having the same to collect, returned that he levied the same on the 12th day of April, 1823, upon the premises in question, and on the same day caused the same to be set off and appraised to apply on said execution ; which return was signed and sealed by the said officer on the 5th day of May, 1823.   To this evidence the plaintiff objected, and the Court refused to admit the same.

The Court charged the jury, that if they believed that the said possession of the defendant was under said levy, they ought to find a verdict for the plaintiff.

To which admission of evidence of possession, under said levy, and rejection of said levy as evidence of the plaintiff's title, and charge to the jury, the defendant made her exceptions, which now come here for consideration.

*Slade, for defendant,* contended, 1st, That the deed from H. Seymour to the plaintiff, was void under the statute of Oct. 28th, 1807—the defendant being in possession of the premises at the time of its execution, claiming adversely to Seymour.   It is true, notwithstanding this statute, that a title purchased by one under whose previous grant of the premises the adverse possession is holden will inure to the benefit of such adverse possessor.—8 John. 137.   And with this view, the plaintiff sought to introduce the levy of the execution and evidence of the possession under it.

But the plaintiff contended at the trial, that the levy was void.   Acknowledging it then to be void, a subsequent conveyance to the plaintiff could on no principle inure to the benefit of the defendant.   If it had been *good* however, the subsequent acquisition of a title by the debtor would not have inured to the defendant's benefit.   It could do so but upon two grounds : either on the principle laid down in the case of *Middlebury College* vs. *Cheney,* 1 Vt. R. 349, or upon the principle of *estoppel.*   But neither of these principles apply to the case of a title acquired by levy.   There are no covenants—no deed—no act whatever, of the debtor.

ADDISON,
January,
1831.

E. Hall
vs.
A. Hall.

39

Addison,
January,
1831.

E. Hall
vs.
A. Hall

But if a subsequently acquired title will not inure to the benefit of the creditor in the case of a *good levy*, much less can it when the levy is *void*. *Such* a levy fails to transfer an estate to the creditor—not because there is nothing in the debtor to be transferred—but because the levy is incapable of transferring any thing. In the case of a *deed* before the acquisition of a title by the grantor, there may be all the legal requisites of a conveyance—something thro' which that title may pass, if its acquisiton can have relation back to the date of the first conveyance. But the levy, if void at all, is wholly void. It can pass nothing at the time, nor can it furnish a channel through which any thing can subsequently pass.

If the levy was *void*, it had no more power to attach itself to a title which the *debtor* might subsequently acquire, than to one which any other person might acquire.—— Hence the conveyance from Seymour to Hall was as void as if made to any other person.

But suppose it to be conceded that Seymour's conveyance does inure to Mrs. Hall's benefit—what follows?—— does it not give her a title? Can it do any thing else? And if it *gives her a title*, what is the plaintiff contending for?—— Why, to defeat the very title which his own argument gives her.

The conveyance from Seymour, is, therefore, believed to be not only within the letter, but within the mischief of the statute.

2d. The next question raised by the case is, whether the defendant's levy was such as to vest in her a title to the premises, supposing a title to have been in the plaintiff.

It is admitted on all hands, that the *extending and levying* must be done within the life of the execution. The necessity of this, results, however, not from any positive enactment, but from the nature of the case. The officer, from the terms of the precept contained in the execution, obviously having no power to arrest the body, or levy on the property of the debtor, after the execution expires.

But the necessity of *recording* rests on no such principle. The execution contains no directions, either express or im-

ADDISON,
January,
1831.

E. Hall
vs.
A. Hall.

plied, with regard to it. Nor does it contain any with regard to the *returning*, as we shall presently show, that can affect the present question. For such directions we must look elsewhere.—And where do we find them? No where but in the 3d section of the act relating to the levying and serving executions. There the Legislature have undertaken expressly to legislate on this very subject; and have made it necessary in order to perfect a title, that the execution should be returned, and that the execution and return should be recorded, &c. And there they leave the subject. They fix no time within which the returning and recording shall be done, but merely say that, *being done*, they shall make a good title—that is, that when done, or at whatever time done, the title will become perfected.

The statute does not, however, say that at *whatever time* the returning and recording shall be done, they shall make a good title against all the world—a title that may be set np against any other title from whomsoever, and at *whatever time* derived; but a good title " as against such debtor, his heirs and assigns;" that is, that *from* the time when the returning and recording shall be done, the debtor shall be incapable of communicating any in the premises to his heirs and assigns.

To have an execution and levy which is returned and recorded, say ten days after the execution expires, make a good title against a grantee of the debtor, who receives a conveyance one week before such return and recording, would work manifest injustice; because a purchaser who may have been apprized of the existence of an execution against the debtor, may, upon an examination of the town Clerk's office, and that of the Clerk of the Court, after the execution expires, be led to believe from the absence of any return or recording, that whatever levy may have been made upon the premises has been abandoned, or that the execution is paid and satisfied.

But no such consequences from a delay of returning and recording can result to the debtor.

With regard to the question of recording, it has been decided in Massachusetts, (15 Mass Rep. p. 137) that where the statute expressly requires it to be done within three months, in order to make a title in the creditor, it

ADDISON,
January,
1831.

E. Hall
vs.
A- Hall.

may be done even within nine months, upon the principle that the recording in such cases is analogous, in its effects, to the recording of deeds and other instruments of conveyance—the object being to give notice to subsequent attaching creditors and purchasers. The above case is one where the statute expressly required the recording to be done within three months, while our statute, as we have seen, fixes *no time* within which it shall be done.

But it may be said that the execution itself, which is according to the form prescribed by law, (Stat. p. 316) commands the officer to return the same to the office whence it issued, within sixty days from its date.

But this is to compel the officer to return the execution within a given time for the purpose of informing the *creditor* of what has been done in the execution of the process, and fix a limit beyond which he shall be responsible to the creditor if he shall not have obtained the amount of the execution in money, or fastened upon estate of the debtor, or committed him to prison. And of what consequence to the *debtor* can it be, whether this evidence is put upon the back of the execution and returned to the Clerk's office one day before, or one day after the expiration of the sixty days?

In this case it appears by the return on the defendant's execution, that the levy, appraisal, and setting out, were made on the 12th of April, within the life of the execution. Without this statement, indeed, in the body of the return, it would have appeared that they were made on the 5th of May—the return being dated, at the bottom, on that day ;- and of course, that they were made two days after the officer *had power* to make them. But because he had not power to make the levy, and cause the appraisal to be made after the sixty days had run, does it follow that, these things having been done when he *had* power to do them, he may not furnish the proper evidence of them to the creditor by the return, and to others by the recording, after the sixty days had expired?

It has been decided, in the case of *Barnard* vs. *Stevens and others*, (2 Aikens p. 429) that if a levy be made within the life of an execution, the sale and *return* may be made afterwards.

ADDISON,
January,
1831.

E. Hall
vs.
A. Hall.

There are cases, however, in which the actual return of the execution *within the sixty days*, is, by some positive enactment, made indispensably necessary for certain purposes. Thus it is enacted that the return of *non est inventus* shall be *legally* made upon an execution, in order to charge bail on the original process. What is here meant by a *legal* return, appears in the 34th section of the same act, p. 68, where it is expressly provided that it shall be *regularly* made within sixty days from the rendition of judgement. The same positive enactment is contained in the 4th section of an act in addition to the justice act, p. 139. It thus becomes, by force of a positive enactment, the *essential* thing to be done—answering, in this respect, to the levy, appraisal and setting out, in the case under consideration.—Comp. L. p. 66. *Third persons* are here sought to be charged, and the return of *non est inventus* is made essential to fix their responsibility.

*Phelps & Bell for plaintiff.*—The first question raised in this case is, whether the deed from the plaintiff to H. Seymour is sufficient to defeat the action. It is contended that it is not. For,

1st, It is a settled rule that a mere trespasser or wrong doer cannot defeat the action where the plaintiff shows a *prima facie title* by showing an outstanding title in a stranger with whom defendant has no connexion.

2dly, The plaintiff was at liberty to introduce the defective levy for the purpose of showing the title under which the defendant claims. This is every day's practice. This being done, the objection to the deed from H. Seymour to the plaintiff fails. For the statute of October 28th, 1807, has never been coesidered to apply to a deed which tends to confirm the title of the party in possession. Such a conveyance is not within the mischief intended by the statute, but is of a contrary character. Hence a deed to a party in possession has never been held void. In this case the plaintiff claims by title derived directly from the plaintiff, and that, subsequent to the deed from plaintiff to Seymour. The release from Seymour to the plaintiff, therefore, inured to the defendant's benefit, and was in confirmation of his title.

ADDISON,
January,
1831.

E. Hall
vs.
A. Hall.

But, 3dly, It was not competent for the defendant to impeach the plaintiff's title as invalid at the date of her levy. As she claimed directly from him, she is estopped from contesting the validity of his title at that time.

This being the case, the only real question here is, whether she derived a valid title from him by the levy in question.

The principal objection to the levy is, that no return was made by the officer of his proceedings under the execution, until some days after the same had expired.

It has been settled in this State, that a return of an execution in all cases, where a return is required by law, shall be actually made and lodged with the Clerk within sixty days from the date of the execution.—*Turner vs. Lowrey*, 2 Aikens, 72.

If it be necessary in any case, it is certainly so where the execution is levied on land. 'The title is not perfected under the levy till the execution is returned; and if this be not done within the life of the execution, it cannot be done at all.

In the cases of *Stevens vs. Adams* (Brayton) and *Turner vs. Lowrey*, all that was contended for, was, that if the officer had actually indorsed upon the execution, his return within sixty days, he had a seasonable time to return it to the Clerk. But in this case, the return indorsed is dated May 5th, after sixty days had run, and recorded still later. And if recording is necessary to perfect the title, this levy is without doubt bad.—Vide *Hubbard vs. Dewey*, 2 Aikens, 312.

The opinion of the Court was pronounced by

PADDOCK, J.—The Court coincide with the counsel in opinion, that, upon its appearing that the defendant's title is derived from the plaintiff, by levy of her execution upon the lands in question, her objection to the introduction of the deed from Seymour, fails altogether; for if the Statute of 1807 were not in existence, and any thing pased to the plaintiff by the deed, it would certainly inure to her benefit, if she held by conveyance from plaintiff, by deed of warrantee; because, if the title were not good the grantor would be held upon his covenants, as was decided in *Mid-*

ADDISON,
January,
1831.

E. Hall
vs.
A. Hall.

*dlebury College* vs. *Cheney*; and the same principle will apply in this case; because, if the lands levied upon prove not to be the estate of the debtor, the creditor by our Statute Law, p. 213, may revive his judgement and take an *alias execution* against such debtor. And the existence of the Statute cannot vary the case; for in no point of view can we consider that the defendant holding under the levy, was in, adverse to the title of the plaintiff. The defendant is possessed of no title but that derived from the plantiff by virtue of the levy, it is that title which she is now defending. If successfully, it is, because she has made his title her own by the levy. But, if the levy be void, then the title which she holds possession under, must be adjudged the plaintiff's. It has never been doubted but that a defendant in ejectment, holding by virtue of the levy of an execution, might attach the possession of the execution debtor to his own to make out a fifteen years possession, if the plaintiff claimed by adverse title. This question being disposed of, we come to the levy.

To acquire a title to real estate by the levy of an execution, the creditor must have obtained a legal judgement; a legal execution, must be put it into the hands of an officer who can legally levy it upon the estate, causing the land legally to be surveyed and appraised; but notwithstanding all this being done within the life of the execution, yet the creditor has acquired no title to the property, because the officer has made no return of his doings; but two days after, in this case, the officer made his return upon the execution, and whether he caused the proceedings to be recorded we are not told. The Court consider it absolutely necessary that some period should be definitely fixed, in which the doings of the officer shall be complete and the rights of the parties fixed.

If the direction in the execution is to govern, then all done by the officer after the return day, is void; if two days after the return day has expired, it will be legal for the officer to make and date his return, then, why not two months or two years after? At what period will the six months redemption commence? on the 12th of April when the appraisal was made, or on the 5th of May when the Officer signed and sealed his return? I am not aware that

E. Hall
vs
A. Hall.

the question has ever been directly brought before the Court to determine between the execution creditor and debtor, which of the two acts passes the title; whether it be the completion of the return by the officer on the execution, or the recording in the proper office and filing in the one from which it issued. In the case of *McLellen* vs. *Whitney*, the facts vary materially from the present: it does not appear but that the return on the execution was perfected by the officer before the return day thereof, and further, the officer delivered seisin and possession of the estate to the creditor who quietly enjoyed the same for many years, and then, without being molested, brought an action of debt on his judgement; but the Court considered that the plea in bar ought to prevail, inasmuch as McLellen took possession of the lands from the hands of the officer, perfected the recording afterwards, though not within the three months, and having continued the possession, Whitney acquiescing therein, he should not at that late day, disannul the proceeding. Judge Parker says the record is not made for the benefit of the execution debtor, but community at large. In *Ladd* vs. *Blunt*, 2 Mass. 402, Judge Parsons says, " the lands remain the debtor's unless the creditor has a good title to them by matter of record." We are of opinion that there can be but little doubt if any, that where the officer does not make and subscribe his return until after the return day of the writ, that the whole proceedings are void; and

The judgement of the County Court is affirmed.

*Phelps & Bell*, for plaintiff.

*Slade & Seymour*, for defendant.